# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| OWNERS INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:10-cv-4182-NKL |
| | ) |
| WARREN FUNERAL CHAPEL, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is the Motion for Summary Judgment [Doc. # 89] filed by Plaintiff Owners Insurance Company ("Owners"). For the following reasons, the Court grants the motion, except with respect to Defendant Harleysville's Counterclaim, which the parties stipulate is voluntarily dismissed.

## I. Background

Defendant Warren Funeral Chapel is a funeral home located in Columbia, Missouri, that is owned and operated by Defendants Harold Warren, Sr., and Harold Warren, Jr. (collectively, the "Warren Defendants" in this action). The Warren Defendants have been sued in several Missouri state court actions in which it is generally alleged that they mishandled and misplaced decedents' bodily remains. Defendants Bertha Warrick, Letha Simmons, and Henry Dogan (collectively, the "*Warrick* Parties") sued the Warrens in state court, alleging that they allowed the body of Bertha Warrick's mother to rot for nearly a year

and gave her another person's cremated remains. Defendant Johnson was the plaintiff in a similar state court action, *Johnson v. Warren Funeral Chapel, et al.*, Case No. 08BA-CV03989.

**A**. **Procedural History**

On August 19, 2010, Owners filed the present action against the Warrens, Defendant Harleysville Insurance Company ("Harleysville"), and Defendants Johnson and the Warricks. The Complaint seeks a declaratory judgment, asserting four counts: (1) Owners owes no duty to defend or indemnify the Warrens because no "bodily injury" occurred within the Owners Policy's coverage period; (2) Owners owes no duty to defend or indemnify the Warrens because a policy exclusion bars coverage for "bodily injury" by the insured which is in violation of any law or ordinance or which is a criminal act; (3) Owners owes no duty to defend or indemnify the Warrens because they were aware or should have been aware of a probable loss or liability prior to obtaining or renewing the Owners Policy; and (4) even if the Court finds that Owners owes a duty to defend or indemnify the Warrens, Owners is entitled to equitable contribution, equitable indemnity, or equitable subrogation from Harleysville for any such defense or indemnification. The Complaint concludes with the following prayer for relief:

> WHEREFORE, Plaintiff, Owners Insurance Company, respectfully requests that this Court enter a declaratory judgment in this case, finding (1) that Owners owes no duty to defend or indemnify Defendants Warren Funeral Chapel, Inc., Harold Warren, Sr., and Harold Warren, Jr. in the Warrick Action or the Johnson Action; and (2) that Owners is entitled to reimbursement for all defense costs and expenses paid from the date it began defending Defendants Warren Funeral Chapel, Inc., Harold Warren, Sr., and Harold Warren, Jr. in the Warrick Action and the Johnson Action to the date of entry of the requested declaratory judgment. . . .

[Doc. # 1 at 33.] Because this Motion for Summary Judgment contains no argument with respect to the second form of relief sought – i.e., reimbursement for all defense costs and expenses paid – the Court addresses here only the question of whether Owners is entitled to a declaration that it owes no duty to defend or indemnify the Warren Defendants.

In September 2010, Plaintiff Owners voluntarily dismissed its claims against the *Warrick* Parties. However, Defendant Harleysville filed a Third-Party Complaint against the *Warrick* Parties, as well as Gevona Clay, Gloria Hicks, Mark Williams, Marvin Williams, and Michael Williams – the plaintiffs in a third state court action against the Warrens. [Doc. # 39.] Harleysville also filed a Counterclaim against Plaintiff Owners, which related only to the *Warrick* action. [Doc. # 38]

On November 15, 2010, the Clerk of the Court entered the default of the Warren Defendants for failure to plead or otherwise defend in response to the Complaint. [Doc. # 63.]

On February 7, 2011, the Court granted the Third-Party *Warrick* Defendants' Motion to Dismiss Harleysville's Third-Party Complaint. [Doc. # 80.] On March 23, 2011, Harleysville voluntarily dismissed its entire Third-Party Complaint – including its claims against Gevona Clay, Gloria Hicks, Mark Williams, Marvin Williams, and Michael Williams. [Doc. # 86.]

As of the deadline to file dispositive motions in this case, only three parties remained (excluding the Warren Defendants in default): Plaintiff Owners, Defendant Harleysville, and Defendant Johnson. On April 12, 2011, Owners filed this motion requesting the Court to

enter summary judgment "in its favor and against Defendants Kathy Johnson and Harleysville Insurance Company[.]" [Doc. # 89 at 14.] Owners also filed a Motion to Dismiss Defendant Harleysville's Counterclaim.

After the filing of briefs by Plaintiff Owners and Defendant Harleysville contesting Plaintiff's Motion for Summary Judgment as it related to Harleysville, the attorneys for Owners, Harleysville, and Johnson filed the following stipulation:

> [T]he parties who have appeared in the above-captioned matter stipulate to Defendant/Counterclaimant Harleysville Insurance Company's ("Harleysville") voluntary dismissal without prejudice of all pending counterclaims in Harleysville Insurance Company's Counterclaim for Declaratory Judgment against Plaintiff Owners Insurance Company.
>
> Plaintiff further stipulates that it is withdrawing its request for summary judgment on Harleysville's counterclaim (Doc. 89) and Memorandum in Support of Motion for Summary Judgment (Doc. 90) with respect to Harleysville's counterclaim. Plaintiff also stipulates that it is withdrawing its Motion to Dismiss (Doc. 93).

[Doc. # 94.] Thus, Defendant Johnson's attorney signed the stipulation dismissing Plaintiff's Motion for Summary Judgment with respect to Harleysville's Counterclaim, even though Johnson has not responded to the Motion for Summary Judgment as it relates to her.

### A. Uncontroverted Facts

Plaintiff Owners asserts that the following relevant facts are undisputed. Having failed to respond to the motion, Defendant Johnson has not controverted any of these facts.

On August 1, 2008, Defendant Johnson filed a class action suit in the Circuit Court of Boone County, Missouri, against the Warren Defendants based on the violation of the

4

right of sepulchre. The Petition in the *Johnson* action alleged the following in the section entitled "Facts Common to All Counts":

> 15. On March 16, 2006, Plaintiff Kathy Johnson entered into an agreement with defendants Warren Funeral Chapel, Harold Warren, Sr., and Harold Warren, Jr., for said defendants to care for the remains of her deceased mother, B.H., for funeral services, for the purchase of a casket and other items attendant to the care of the decedent, for a burial plot in Rockbridge Cemetery, and for burial services attendant thereto.
>
> 16. Thereafter, Plaintiff Kathy Johnson attempted to locate her mother's grave in said Rockbridge Cemetery, but was unable to locate the grave. Upon contacting said defendants, said defendants could not definitively answer where, or even if, Plaintiff's mother was buried.
>
> 17. Defendant John Doe Turner also advised Plaintiff Kathy Johnson that he had no idea where her mother's remains were buried, or even if her remains were buried at all.
>
> 18. Said defendants advised Plaintiff Kathy Johnson of the existence of a record of where Plaintiff's mother's remains may be buried, but fails and refuses to locate such record.
>
> 19. Said defendants further advised said plaintiff that said defendants may have caused her mother's remains to be cremated and, if so, have lost the location of her mother's ashes.

[Doc. # 90, Ex. 1.]

The owner of Rockbridge Cemetery, David Turner, informed Defendant Johnson in early 2008 that her mother was buried in lot G17 in Rockbridge Cemetery. Johnson had her mother's body exhumed from lot G17 in February 2009. The Petition in the *Johnson* action also alleges the following in the section entitled "Facts Common to All Counts":

> 20. Upon information and belief, other members of the class have suffered similar indignities, embarrassment, insult, and outrage, including but not limited to:

5

> a. Bodies being kept on the premises of Defendant Warren Funeral Chapel with[out] being embalmed and without being refrigerated, some for almost a year after death;
>
> b. Decayed bodies being stored in random locations throughout Defendant Warren Funeral Chapel's premises, some for almost a year after death;
>
> c. Storing bags of organs from other bodies with bodies of other decedents; and
>
> d. Cremating bodies in the same container in violation of Missouri law.

*Id.*

The Petition in the *Johnson* action further alleges the following, in the section entitled "Violation of the Right of Sepulchre":

> 21. Plaintiff and the members of the class had the right to choose and control the burial, cremation, or other final disposition of their decedents' bodies.
>
> 22. Defendants Warren Funeral Chapel, Harold Warren, Sr., and Harold Warren, Jr., had respective duties to acknowledge and follow the decisions of Plaintiff and the members of the class as to burial, cremation, or other final disposition of their decedents' bodies. Said defendants also had respective duties to ensure that the decedents, Plaintiff, and the members of the class were handled and treated with dignity and respect as befits one who holds himself out as qualified and competent to properly handle the remains of decedents prior to and at burial.
>
> 23. The conduct of Defendants as alleged herein constitutes negligent and intentional mishandling of Plaintiffs' decedents.
>
> 24. As a result of Defendants' conduct, Plaintiff and the members of the class have incurred substantial expense in locating the bodies of their decedents, in ensuring that their decedents were thereafter properly handled, and in hiring the services of other funeral directors.
>
> 25. As a result of Defendants' conduct, Plaintiffs and the members of the class have suffered terrible, frightening indignities, embarrassment, insult, and

outrage in discovering that their decedents were handled with such a lack of care. Such indignities, embarrassment, insult, and outrage has caused Plaintiff and the members of the class have to [sic] suffer mental anguish.

*Id.*

Defendant Johnson does not claim that she suffered psychiatric injuries or emotional distress that would require medical treatment due to the Warren Defendants' conduct as alleged in the *Johnson* action. Johnson did not seek medical treatment for any psychiatric injuries or illnesses, mental anguish, or emotional distress due to the Warren Defendants' conduct as alleged in the *Johnson* action.

On July 25, 2008, the Missouri Attorney General and the State Board of Embalmers and Funeral Directors ("the Board") filed a Petition for injunction ("the Attorney General's Petition") against Warren Funeral to enjoin them from engaging in any funeral-related practices. The Attorney General's Petition alleges as follows:

### July 11, 2008 Inspection

15. On July 11, 2008, inspectors for the Board inspected Warren Funeral Home.

16. Upon entering Warren Funeral Chapel, the inspectors noted a strong odor throughout the facilities.

17. During its inspection of Warren Funeral Chapel, the Board inspectors found the body of J.H. in an advanced stage of decay stored in the Electrical Room of Warren Funeral Chapel.

18. J.H. died on September 9, 2007. Her cause of death was Hepatitis B, Hepatitis C, and Alcoholic Hepatitis.

19. The body of J.H. was delivered to Warren Funeral Chapel on September 9, 2007.

7

> 20. J.H.'s remains were never embalmed and were stored in a double body bag. Warren, Sr., opened the body bag to reveal the remains with his bare hands.
>
> 21. J.H.'s remains were stored at Warren Funeral Chapel without refrigeration or embalming from September 9, 2007 until July 11, 2008, in violation of [Missouri law].
>
> 22. Thereafter, the Boone County Medical Examiner took the body of J.H. into custody and it has now been cremated.
>
> 23. On July 11, 2008, the inspectors found a casket that had a strong odor. Upon opening the casket, a cockroach ran off and body fluids were in the foot end of the casket along with powder formaldehyde.
>
> 24. Warren, Sr., stated that the body of J.H. had just been removed from the casket, and that it would be used for cremation of another body.
>
> 25. On July 11, 2008, the inspectors found the body of W.B. lying on a cot in the basement. W.B. died on July 10, 2008.
>
> 26. Warren, Sr., stated that at that time, the body of W.B. had not been embalmed. While talking with inspectors, Warren Sr. unzipped the body bag in which W.B. was stored and started positioning the facial features with his bare hands.

[Doc. # 90, Ex. 5.] The Attorney General's Petition goes on to detail further inspections on July 15 and 16, 2008. On September 8, 2008, the Board also filed a complaint against Warren Funeral, Warren, Sr., Warren, Jr., and Helen Warren, which contained similar allegations. [Doc. # 90, Ex. 6.]

On July 29, 2008, the Board, Warren Funeral, Warren, Sr., and Warren, Jr. entered into a Joint Motion for Consent Order, Joint Stipulation of Facts and Conclusions of Law, Waiver of Hearings Before the Administrative Hearing Commission and the State Board of Embalmers and Funeral Directors, and Disciplinary Order ("the Joint Stipulation"). The

Joint Stipulation was signed by Harold Warren, Sr., and Harold Warren, Jr., and admits much of the conduct alleged in the Attorney General's Petition and the Board Complaint. [Doc. # 90, Ex. 7.]

Owners began insuring Warren Funeral on Policy No. 44-496-694 for the period of June 5, 2003 to June 5, 2004. Owners sent the Warrens a cancellation notice on September 17, 2007, indicating that the Owners Policy would be cancelled on October 11, 2007, for nonpayment of premium. Pursuant to the terms of the Owners Policy, to effect a unilateral cancellation for nonpayment of premium, the insurer's notice of cancellation must be sent ten days before the cancellation will become effective. On October 17, 2007, Owners sent a Cancellation Invoice to Warren Funeral stating that "this Policy is canceled as of 10-11-2007." [Doc. # 90, Ex. 11.]

The Owners Policy states as follows:

**BUSINESSOWNERS LIABILITY COVERAGE FORM**
. . .
**A. COVERAGES**
**1. Business Liability**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under COVERAGE EXTENSION SUPPLEMENTARY PAYMENTS.
    a. This insurance applies only:
        (1) To "bodily injury" or "property damage":
            (a) That occurs during the policy period . . . .
        (2) To "personal injury" caused by an offense:
            (a) Committed . . . during the policy period . . . .

**2. Medical Expenses**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident . . . [which] takes place . . . during the policy period . . . .

**EXCLUSIONS**
1. Applicable to Business Liability Coverage -
This insurance does not apply to:
a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

j. "Bodily injury" or "property damage" due to rendering or failure to render any professional service.
. . .

**LIABILITY AND MEDICAL EXPENSES DEFINITIONS**
. . .
3. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time:
. . .
10. "Personal Injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
e. Oral or written publication of material that violates a person's right of privacy.
. . .

**FUNERAL DIRECTORS OR CEMETERY PROFESSIONAL LIABILITY ENDORSEMENT**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE BUSINESSOWNERS LIABILITY COVERAGE FORM.**

It is agreed:

> The coverage for "bodily injury" and "property damage" liability with respect to the insured's operations as a funeral director or cemetery is extended as follows:
>
> **COVERAGE EXTENSION**
>
> We will pay those sums which the insured becomes legally obligated to pay as damages for:
>
> 1. "Bodily injury", including mental anguish, and "property damage" arising out of the:
> > a. rendering of; or
> > b. failure to render;
>
> professional services with respect to deceased persons. Such injury or damage shall be deemed:
>
> > a. to have been caused by an "occurrence"; and
> > b. not to have been expected or intended from the standpoint of the insured.
>
> . . .
>
> These extensions are subject to the following:
>
> **1. ADDITIONAL EXCLUSIONS**
>
> We do not cover:
>
> > a. any "bodily injury", including mental anguish, or "property damage" by the insured or with his knowledge and which is:
> >
> > > (1) in violation of any law or ordinance; or
> > > (2) a criminal act.
>
> . . . .

[Doc. # 90, Ex. 10.]

## II. Discussion

### A. Summary Judgment Standard

11

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a district court must look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248.

**B.  Whether Summary Judgment is Appropriate with respect to Defendant Johnson**

Plaintiff Owners argues that although Defendant Johnson's underlying claim asserts "bodily injury" – in the form of emotional and physical sickness, humiliation, and mental anguish due to Johnson's realization that the Warrens failed to properly dispose of her decedent's remains – Johnson was not aware that the Warrens had failed to properly dispose of her decedent's remains until after Board inspectors searched Warren Funeral Chapel on

July 11, 2008. Because the Owners Policy was canceled on October 21, 2007, pursuant to a cancellation notice sent to the Warrens on October 11, 2007, Johnson could not have suffered "bodily injury" during the policy period. Owners also argues that the Owners Policy's exclusion for illegal conduct bars coverage for the allegations in the *Johnson* action, as the Warren Defendants' alleged behavior was in violation of Missouri law.

As Owners points out, under Missouri law, "[i]t is well settled that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the alleged wrongful act was committed, but is the time when the complaining party was actually damaged." *Kirchner v. Hartford Accident & Indemnity Co.*, 440 S.W.2d 751, 756 (Mo. Ct. App. 1969). In *Galvin v. McGilley Memorial Chapels*, the Missouri Court of Appeals wrote:

> If the switch of the bodies had never been discovered no emotional distress would have occurred and thus the plaintiffs would have been foreclosed from using a cause of action based in Missouri law. The rule of harmful impact as defined by Missouri courts precludes such a result and thus the law of South Dakota applies.

746 S.W.2d 588, 591 (Mo. Ct. App. 1987).

Caselaw from other jurisdictions also makes it clear that the emotional distress accompanying a claim for violation of the right of sepulcher accrues when the plaintiff discovers the mistreatment of the deceased body. In *Melfi v. Mount Sinai*, for example, a New York court found that "[t]he next of kin's mental anguish in these situations . . . cannot be felt until the next of kin is aware of the interference with his/her right of possession of the loved one's body for burial." 64 A.D.3d 26, 39 (N.Y. S.Ct. App. Div. 2009). The court also stated that "it is axiomatic that a next of kin cannot be injured emotionally until he or she

13

becomes aware or has knowledge that his or her right of sepulcher has been interfered with unlawfully." *Id.* Having failed to respond to this Motion for Summary Judgment, Defendant Johnson has not called any of this caselaw into question.

Here, the only damages alleged in the *Johnson* action are the physical and emotional sickness caused by the realization that Johnson's decedent's body was mistreated. Such damages could not have occurred until Defendant Johnson was aware of the mistreatment of her decedent's body. It is uncontroverted that Johnson did not realize that her decedent's body had been mistreated before Board inspectors searched Warren Funeral Chapel on July 11, 2008. Based on the evidence submitted in this case, a reasonable juror could not conclude that any alleged emotional distress or sickness due to the Warren Defendants' violation of the right of sepulcher occurred before July 11, 2008.

The Owners Policy was cancelled on October 21, 2007, pursuant to a cancellation notice sent to the Warrens on October 11, 2007. That notice stated that "this Policy is canceled as of 10-11-2007," and a cancellation credit was issued. [Doc. # 90, Ex. 11.] Pursuant to the terms of the Owners Policy, to effect a unilateral cancellation for nonpayment of premium, the insurer's notice of cancellation must be sent ten days before the cancellation will become effective. Because the October 11, 2007 cancellation was the first unequivocal cancellation, the effective date of the cancellation was October 21, 2007. Thus, for the Owners Policy to provide coverage for the *Johnson* action, there must have been "bodily injury" that occurred prior to October 21, 2007. Because Johnson's injuries could not have

14

begun until July 11, 2008, she did not suffer "bodily injury" during the policy period for the Owners Policy.

For the reasons stated above, even assuming that Defendant Johnson suffered a "bodily injury," a reasonable juror could not conclude that such injury occurred during the policy period. Therefore, Plaintiff Owners is entitled to a declaration that it owes no duty to defend or indemnify the Warren Defendants in the *Johnson* action. Having concluded that there is no coverage for the Warren Defendants' conduct with respect to Defendant Johnson under the relevant Owners Policy, it is unnecessary for the Court to analyze Owners's alternative arguments.

## III. Conclusion

Accordingly, it is hereby ORDERED that the Motion for Summary Judgment [Doc. # 89] filed by Plaintiff Owners Insurance Company is GRANTED, except with respect to Defendant Harleysville's Counterclaim, which the parties stipulate is voluntarily dismissed.

  s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: July 5, 2011
Jefferson City, Missouri